[No. 85112-3.   En Banc.]
Argued September 22, 2011.     Decided December 22, 2011.

*In the Matter of the Marriage of* CAROL MARIE (ALMGREN)
SCHNEIDER, *Respondent*, and JEFFREY
JOSEPH ALMGREN, *Petitioner*.

*Charles M. Stroschein,* for petitioner.
*Scott C. Broyles,* for respondent.

¶1 WIGGINS, J. — The Uniform Interstate Family Support Act (UIFSA), chapter 26.21A RCW, governs modification of child support obligations in Washington when the initial child support order was entered in a different state but one of the parties lives in Washington. The UIFSA provides that the duration of child support is governed by the laws of the original forum state. Jeffrey Almgren and Carol Schneider

divorced in Nebraska and Schneider moved to Washington with the couple's two children. We hold that the superior court erred by extending the father's child support obligation past the age of majority by granting postsecondary support for the daughter to attend college. Nebraska law would not have allowed postsecondary support in this case, and the UIFSA provides that the law of the original forum state governs the duration of child support. We reverse the Court of Appeals, which affirmed the trial court, and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2 Carol Schneider (the mother) and Jeffrey Almgren (the father) were divorced in Nebraska in 1997. The couple had two children, Amanda, born December 24, 1990 and D.J.A., born October 31, 1993. The decree of dissolution set child support to continue during each child's minority. In Nebraska, the age of majority is 19 years. *See* NEB. REV. STAT. § 42-371.01(1). The Nebraska court modified the decree, approving the mother's move with the children to Washington and adjusting obligations to provide health insurance for the children. Neither modification changed the duration of the father's child support obligation.

¶3 The mother moved with the children to Washington, and the father moved to Minnesota. In December 2005, the mother registered and moved to modify the Nebraska decree in Asotin County under the Uniform Child Custody Jurisdiction and Enforcement Act, chapter 26.27 RCW. The mother also submitted the Nebraska decree and subsequent modifications under a cover sheet for UIFSA documents. The record does not reveal whether the mother also filed a petition to modify child support under the UIFSA. But her petition to modify the parenting plan/residential schedule was based, in part, on changed economic circumstances, including the fact that child support had not been reviewed since 1997. And under "Relief Requested," the mother asked that the court (1) modify the custody decree/

parenting plan/residential schedule and (2) "[e]nter an order establishing child support in conjunction with the proposed parenting plan/residential schedule. . . ." Clerk's Papers at 325.

¶4 In January 2007, the Asotin County Superior Court entered an order of child support stating that the obligation would terminate when the children reach 18 or graduate from high school, whichever occurs last, and reserving the right to request postsecondary support. The order was entered without objection by the father regarding the application of the UIFSA or challenge to the trial court's jurisdiction to modify the Nebraska child support order.

¶5 In January 2009, the mother petitioned for postsecondary educational support for Amanda, who was still 18 and in high school and had been accepted for admission to Eastern Washington University. The father filed a cross motion to modify child support for the younger child downward due to the father's recent loss of his job. The trial court granted the mother's motion for postsecondary educational support for Amanda and denied the father's motion for a downward modification.

¶6 The father moved for reconsideration, raising for the first time the issue of the trial court's authority under the UIFSA to enter orders extending child support for Amanda beyond the age of majority in Nebraska. After hearing argument, the trial court denied reconsideration. Although recognizing the underlying policy of the UIFSA to prevent forum shopping for child support, the trial court declined to reconsider its jurisdiction, considering the time that had passed since it had entered a child support order in this case with no objection from either party. The trial court ruled that it had jurisdiction to modify its own 2007 child support order, overruled the father's objections, and entered the findings/conclusions and child support order.

¶7 The father filed a second motion for reconsideration, which was denied. The Court of Appeals affirmed in an unpublished opinion. *In re Marriage of Schneider*, noted at

157 Wn. App. 1045, 2010 WL 3304309, 2010 Wash. App. LEXIS 1925. The Court of Appeals held (1) the UIFSA did not apply to the award of postsecondary educational support because the trial court modified its own 2007 order, not the Nebraska order, 2010 WL 3304309, *3, 2010 Wash. App. LEXIS 1925, at *7-8; (2) even if UIFSA had applied, it would not have prevented the trial court from extending the father's child support duty because Nebraska law permitted the extension, 2010 WL 3304309, at *3, 2010 Wash. App. LEXIS 1925, at *7-8; and (3) the trial court's findings of fact supported the award, 2010 WL 3304309, at *5-6, 2010 Wash. App. LEXIS 1925, at *11-17. We granted review on the issue of postsecondary support only. *In re Marriage of Schneider*, 170 Wn.2d 1025 (2011).

## ANALYSIS

■ ¶8 A superior court's statutory authority is a question of law that we review de novo. *Okeson v. City of Seattle*, 150 Wn.2d 540, 548-49, 78 P.3d 1279 (2003); *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 100 P.3d 791 (2004).

### I.  A Brief History of the UIFSA

■ ¶9  To understand the issues presented by this case, it is helpful to understand the origin of the UIFSA. The UIFSA was developed in response to federal legislation impacting state child support enforcement laws. Kurtis A. Kemper, Annotation, *Construction and Application of Uniform Interstate Family Support Act*, 90 A.L.R.5TH § 2, at 31 (2001). Prior to the development of the UIFSA, when parties in a child support action lived in different states, each state could issue its own child support orders. *Id.* This potential for competing child support orders, with varying terms and duration depending on the issuing jurisdiction, resulted in a proliferation of litigation. Unif. Interstate Family Support Act (2008) § 611, 9 pt. 1B U.L.A. cmt. at 139 (Supp. 2011). The UIFSA addressed this "chaos" by establishing a "one-order" system for child support orders by

providing that one state would have continuing exclusive jurisdiction over the order. *Id.* at 139-40. The UIFSA enforces the one-order system in a variety of ways, including registration of out-of-state child support orders for either enforcement, modification, or both. *See* Kemper, *supra*, § 2; *see also* RCW 26.21A.500-.515 (enforcement); RCW 26.21A-.550-.570 (modification). The modification provisions of the UIFSA are mirrored in the Full Faith and Credit for Child Support Orders Act. 28 U.S.C. § 1738B.

¶10 The UIFSA was revised in 1996, 2001, and 2008. *Id.*; *see* 9 pt. 1B U.L.A. prefatory note at 73 (Supp. 2011). Shortly after the 1996 revision, Congress required all states to adopt the UIFSA in order to remain eligible to receive federal funding for child support enforcement. 42 U.S.C. § 666(f); Kemper, *supra*, § 2. All 50 states have done so. Kemper, *supra*, § 2. Washington has adopted the 2001 revisions. LAWS OF 2002, ch. 198, §§ 101-906; ch. 26.21A RCW.

¶11 In this case, the ultimate issue presented by the parties is whether the trial court's award of postsecondary educational support was correct.

## II.  Subject Matter Jurisdiction

¶12 We first address the threshold issue of the trial court's authority to enter the 2007 order, which modified support and reserved the mother's right to seek postsecondary support. Washington and some other states have sometimes treated the trial court's authority to modify the duration of an out-of-state child support order as an issue of subject matter jurisdiction. *See, e.g., In re Marriage of Erickson*, 98 Wn. App. 892, 896-97, 991 P.2d 123 (2000) (holding that UIFSA granted subject matter jurisdiction to enforce an out-of-state child support order only if the order was registered under the act and specified conditions were met); *In re Marriage of Doetzl*, 31 Kan. App. 2d 331, 337, 65 P.3d 539 (2003) (trial court "lacked jurisdiction to modify the duration of [the father's] support obligation" where the

duration of the obligation was not modifiable in the initial forum state); *Phillips v. Fallen*, 6 S.W.3d 862, 865 (Mo. 1999) (holding that "[a] Washington court lacked subject matter jurisdiction to modify the Kansas order" where the registration provisions of Washington's UIFSA were not met).

¶13 We reach this issue (even though neither party raised it) in order to decide whether we can properly reach the issues pertaining to the 2009 modification.[1] We hold that the trial court had jurisdiction in 2007 but lacked authority to enter the order, which was erroneous. We reject the reasoning of *Erickson*, which injects an unnecessary note of confusion into UIFSA.

*a. The trial court had subject matter jurisdiction to modify the Nebraska child support order in 2007*

¶14 Washington superior courts have jurisdiction "in all cases . . . in which jurisdiction shall not have been by law vested in some other court." CONST. art. IV, § 6. This broad constitutional grant of jurisdiction on the superior courts requires that exceptions to that jurisdiction be narrowly read. *Orwick v. City of Seattle*, 103 Wn.2d 249, 251, 692 P.2d 793 (1984). Where a court does lack subject matter jurisdiction to issue an order, the order is void. *See Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 541, 886 P.2d 189 (1994). But subject matter jurisdiction refers to the court's authority to entertain a type of controversy, not simply lack of authority to enter a particular order. *Id.* at 539; *see also Williams v. Leone & Keeble, Inc.*, 171 Wn.2d 726, 730, 254 P.3d 818 (2011).

¶15 The legislature has limited the superior courts' *authority*—not the superior courts' *jurisdiction*—to modify another state's child support order by adopting the UIFSA. *See* Kemper, *supra*, § 2. The mother did not meet

---

[1] On the other hand, we need not address apparent procedural errors in the registration of the Nebraska decree in Washington. Neither party has raised these issues and they do not affect our analysis because we may assume that the mother has substantially complied with the procedural requirements of UIFSA.

the statutory conditions to allow the trial court to modify the Nebraska order. RCW 26.21A.550 defines two situations in which a Washington court may modify another state's child support order:

(1) . . . [U]pon petition a tribunal of this state may modify a child support order issued in another state which is registered in this state if, after notice and hearing the tribunal finds that:

(a) The following requirements are met:

(i) The child, the obligee who is an individual, and the obligor do not reside in the issuing state;

(ii) A petitioner who is a nonresident of this state seeks modification; and

(iii) The respondent is subject to the personal jurisdiction of the tribunal of this state; or

(b) This state is either the state of residence of the child or of a party who is an individual subject to the personal jurisdiction of the tribunal of this state, and all of the parties who are individuals have filed consents in a record in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction.

¶16 Here, the conditions of subsection (1)(a)(ii) are not met because the mother as the petitioner is not a "nonresident of this state." Nor is subsection (1)(b) satisfied because the record does not contain the mother's or the father's consents filed in the Nebraska tribunal that issued the original child support order. Therefore, neither of the conditions that would have allowed the trial court to modify the Nebraska child support order appears to have been met.

¶17 The Court of Appeals considered a similar case in *Erickson*, in which, as here, the obligee mother and children lived in Washington, but the obligor father lived in another state. 98 Wn. App. at 896-97. The appellate court held that the requirements of UIFSA, RCW 26.21A.550(1)(a) (codified at the time as RCW 26.21.580) (1997), *repealed by* LAWS OF 2002, ch. 198, § 901), were not met. The court concluded that under the circumstances Washington courts do not

have jurisdiction over the subject matter. *Erickson*, 98 Wn. App. at 897. This was incorrect because the *Erickson* court confused the superior court's authority with its subject matter jurisdiction. More properly read, RCW 26.21A-.550(1) deprives the trial courts of the authority to issue a particular form of relief—here, an order modifying child support—when its conditions are not met. A court that grants relief beyond the scope of its authority commits an error of law but does not exceed its subject matter jurisdiction. *See Marley*, 125 Wn.2d at 539, 541; *Williams*, 171 Wn.2d at 730. To the extent that *Erickson* holds otherwise, it is disapproved.

### b. *The father waived personal jurisdiction objections in the 2007 proceeding*

¶18 There remains the issue of personal jurisdiction over the father. The father appears to have made a general appearance because his attorney approved entry of the 2007 Washington order. UIFSA expressly provides that simply appearing in a modification action does not confer jurisdiction over the person. RCW 26.21A.100(2). Nonetheless, an objection based on personal jurisdiction must be timely raised or it is waived. CR 12(h)(1). Here, the father waived his objection to personal jurisdiction when he failed to timely object to the entry of the 2007 order.

¶19 In contrast to 2007, the father did more than enter a general appearance in the 2009 modification proceeding; he sought affirmative relief by moving to reduce support for the younger child. By making this motion, the father submitted to the personal jurisdiction of the Washington trial court. Thus, with the father as the moving party, the conditions allowing the trial court to further modify the Nebraska child support order were met: (1) neither the parties nor the children reside in Nebraska, RCW 26.21A.550(1)(a)(i); (2) the moving party (father) does not reside in Washington, RCW 26.21A.550(1)(a)(ii); and (3) Washington has personal jurisdiction over the mother as a resident. RCW 26.21A.550(1)(a)(iii).

III. Authority To Modify Duration of Child Support

¶20 Once the conditions allowing a Washington Court to modify another state's child support order have been met, the UIFSA imposes restrictions on which elements may be modified:

> (3) Except as otherwise provided in RCW 26.21A.570, *a tribunal of this state may not modify any aspect of a child support order that may not be modified under the law of the issuing state.* . . .

> (4) In a proceeding to modify a child support order, *the law of the state that is determined to have issued the initial controlling order governs the duration of the obligation of support.* The obligor's fulfillment of the duty of support established by that order precludes imposition of a further obligation of support by a tribunal of this state.

RCW 26.21A.550 (emphasis added).

¶21 Our fundamental purpose in construing statutes is to ascertain and carry out the intent of the legislature. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). We determine the intent of the legislature primarily from the statutory language. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). In the absence of ambiguity, we will give effect to the plain meaning of the statutory language. *See TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 281, 242 P.3d 810 (2010). Further, we avoid an interpretation that renders any of the statutory language superfluous. *G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 309, 237 P.3d 256 (2010).

¶22 Here, the statute plainly says that (1) if an aspect of a child support order may not be modified under the law of the issuing state, a Washington court may not modify that aspect of the order and (2) when modifying the duration of an out-of-state child support order, the court must apply the law of the state that issued the initial controlling order. The

initial controlling order in this case was the Nebraska child support order because the Nebraska order was entered before either of the Washington orders.

¶23 In this case, the successive Washington child support orders modified the duration of child support in two ways. First, the 2007 order changed the termination of support from the Nebraska age of majority (age 19) (NEB. REV. STAT. § 42-371.01(1)) to the Washington age of majority (age 18) or when the child was no longer enrolled in high school, whichever came last. In addition, the 2007 order reserved the right to petition for postsecondary support past the age of 18.

¶24 Second, the 2009 Washington order awarded Amanda postsecondary educational support that would continue until she reached 23 years of age, the upper limit of postsecondary educational support in Washington. RCW 26.19.090(5). Again, the original Nebraska child support order did not call for child support beyond the age of 19.

¶25 The trial court held that it had jurisdiction to modify its own 2007 child support order. The Court of Appeals affirmed, holding that because the trial court was modifying its own order and not the Nebraska child support order, the UIFSA did not apply. *Schneider*, 2010 WL 3304309, at *3, 2010 Wash. App. LEXIS 1925, at *7. This conclusion is contrary to the plain language of RCW 26.21A.550(4), which refers to the "initial controlling order." In this case, the Nebraska child support order was clearly the *initial controlling order* because it was modified by the 2007 Washington order. Child support orders are frequently modified *as children grow older or when circumstances* change. RCW 26.09.170(5), (6)(b), (7). If the UIFSA ceased to apply after the first modification, the reference to the state that issued the *initial controlling order* would be superfluous.

¶26 Furthermore, the interpretation adopted by the appellate court defeats one of the primary purposes of enact-

ing the UIFSA, as explained in the comments to the 2008 amendment to the UIFSA:[2]

> Prior to 1993 American case law was thoroughly in chaos over modification of the duration of a child-support obligation when an obligor or obligee moved from one state to another state and the states had different ages for the duration of child support. The existing duration usually was ignored by the issuance of a new order applying local law, which elicited a variety of appellate court opinions. UIFSA (1992) determined that a uniform rule should be proposed, to wit, duration of the child-support obligation would be fixed by the initial controlling order.

9 pt. 1B U.L.A. cmt. at 140 (Supp. 2011).

¶27 Although all states have adopted the UIFSA, some states attempted to subvert the policies underlying the duration provisions:

> by holding that completion of the obligation to support a child through age 18 established by the now-completed controlling order does not preclude the imposition of a new obligation thereafter to support the child through age 21 or even to age 23 if the child is enrolled in higher education.

Unif. Interstate Family Support Act (2001) § 611, 9 pt. 1B U.L.A. cmt. at 258. The 2001 amendments were intended to make the decision that the original state's law should control duration "absolutely clear." *Id.* Section 611(d), represented by RCW 26.21A.550(4), was designed to eliminate these "attempts to create multiple, albeit successive, support obligations." 9 pt. 1B, U.L.A. cmt. at 258.

¶28 The appellate court's interpretation also subverts the purpose of the UIFSA to preclude forum shopping by either the obligee or the obligor: One would need only to

---

[2] Although Washington has adopted the 2001 version of the UIFSA, the 2008 comment is quoted here because it more clearly sets out the history and purpose of § 611(c) and (d), which correspond to RCW 26.21A.550(3) and (4), than do the 2001 comments. Additionally, the 2008 modifications to the UIFSA, currently under consideration by the legislature, did not substantively modify these provisions.

move to a state with laws offering a more appealing duration of child support, have the order modified in some other way, then petition to modify the duration according to the laws of the new forum state.

¶29 Having rejected the holdings of the trial and appellate courts that the 2009 order did not modify the initial Nebraska order, we analyze whether the 2009 order violated the UIFSA's restrictions on modifications.[3] RCW 26.21A.550(3), quoted above, prohibits a modification of "any aspect of a child support order that may not be modified under the law of the issuing state." In addition, subsection (4) clearly provides that the "law of the state that is determined to have issued the initial controlling order governs the duration of the obligation of support."

¶30 Nebraska does allow for proceedings to modify child support. NEB. REV. STAT. § 42-364(6) (providing for modification proceedings). However, Nebraska law also provides that the obligation for child support in Nebraska continues only until the age of majority unless the dissolution decree contains a different provision or the parties reached a property settlement agreement incorporated into the decree. *See, e.g., Foster v. Foster*, 266 Neb. 32, 35-36, 662 N.W.2d 191 (2003) (holding that Nebraska dissolution statutes do not empower the courts to order a parent to contribute to support of a child beyond the age of majority, but the courts do retain jurisdiction to enforce the terms of a property agreement incorporated into the decree, including an agreement to provide support after the child attains majority); *Zetterman v. Zetterman*, 245 Neb. 255, 259-60, 512 N.W.2d 622 (1994) (holding that a court may not order child support beyond the age of majority in a dissolution action, but the court may enforce the terms of a property settlement agreement that provides for support beyond the

---

[3] The Court of Appeals held that, even if the UIFSA did apply, Nebraska law permitted the grant of postsecondary educational support. *Schneider*, 2010 WL 3304309, at *3, 2010 Wash. App. LEXIS 1925, at *7. However, a review of Nebraska law demonstrates that this position is not tenable.

age of majority); *Meyers v. Meyers*, 222 Neb. 370, 377, 383 N.W.2d 784 (1986).

¶31 In short, the duration of child support is not modifiable under Nebraska law because support extends only to age 19 absent circumstances not present here,[4] unless the parties have agreed to postmajority support in a settlement agreement that is incorporated into the dissolution decree. The mother and the father did not enter into such a settlement agreement. Accordingly, if granting postsecondary support was a change in the duration of child support, the 2009 order was erroneous under the UIFSA and RCW 26.21A.550. We now turn to whether allowing postsecondary educational support was a durational change.

IV.  An Award of Postsecondary Educational Support Is a Durational Change to Child Support under the UIFSA

¶32 The 2009 modification clearly changed the duration of support from age 19 to include a period of postsecondary support up to age 23. The order necessarily violates RCW 26.21A.550(4) unless the petition to modify was not "a proceeding to modify a child support order" within the meaning of subsection (4). The language of the statute speaks of a duty of "support," not a duty of "child support":

> In a proceeding to modify a child support order, the law of the state that is determined to have issued the initial controlling order governs the duration of the *obligation of support*. The obligor's fulfillment of the *duty of support* established by that order precludes imposition of *a further obligation of support* by a tribunal of this state.

RCW 26.21A.550(4) (emphasis added). Accordingly, the language of UIFSA itself seems clearly to prohibit the imposition of postsecondary support where that would extend the duration of support under the initial decree.

---

[4] Amanda has neither died, married, nor become emancipated.

¶33 Washington's statutory scheme also supports the conclusion that postsecondary educational support is "support" within the meaning of UIFSA. The provisions for postsecondary educational support are found in chapter 26.19 RCW along with the child support schedule. RCW 26.19.090. Educational expenses for minor children are also available in a child support award. *See* RCW 26.19.080(3) (providing for tuition as a "special child rearing expense[ ]" that will be shared in the same proportion as the basic child support obligation). The child support schedule may be used to set the amount of postsecondary educational support. RCW 26.19.090(1). Moreover, an award of postsecondary educational support is contingent on a finding that the child is dependent and relying on the parents for the "reasonable necessities of life." RCW 26.19.090(2). In other words, the child, even after achieving the age of majority, is not self-sufficient and must be supported as would a minor child. Additionally, when the dependent child lives with one of the parents, postsecondary educational support can function just like ordinary child support, i.e., the obligor parent can be ordered to pay a monthly amount to the parent with whom the child resides. RCW 26.19.090(6). Postsecondary educational support, therefore, fits within the structure of the child support statute in general.

¶34 Finally, common sense dictates that an award of postsecondary educational support is a durational change to child support under the UIFSA. Postsecondary educational support is granted to support an otherwise adult child while pursuing education beyond high school; it is money paid to support a dependent child, therefore it is child support. And the statute sets a durational limit to this form of child support. RCW 26.19.090(5) (postsecondary educational support may not be ordered beyond the child's 23rd birthday).

¶35 The New Hampshire Supreme Court has recently addressed a case similar to the case at bar. *In re Scott,* 160 N.H. 354, 999 A.2d 229 (2010). In *Scott,* the parties had been

divorced in Massachusetts, after which the mother moved with the children to California and the father moved to New Hampshire. *Id.* at 356, 357. The Massachusetts child support order provided for postsecondary support under a Massachusetts law similar to RCW 26.19.090. *Id.* at 363; MASS. GEN. LAWS ch. 208, § 28. The New Hampshire Supreme Court rejected the father's argument that he was not liable for postsecondary support under New Hampshire law, holding that "Massachusetts law govern[ed] the duration of . . . child support . . . because, under UIFSA, duration is a *non-modifiable* aspect of an issuing state's original child support order." *Scott*, 160 N.H. at 361 (citing the 2001 comments to the UIFSA and § 611(d)).

¶36 Other states have also addressed postsecondary educational support as a durational issue under the UIFSA. *See, e.g.*, *Marshak v. Weser*, 390 N.J. Super. 387, 392, 915 A.2d 613 (2007) (holding that New Jersey court could not order payments for college tuition, available under New Jersey law, because the law of Pennsylvania, the state that issued the initial controlling order, did not allow for modification of child support to include college tuition); *Doetzl*, 31 Kan. App. 2d 331 (holding that postsecondary support was available under a Missouri child support order, even though Kansas law provides for child support until the age of majority only and that Missouri law governed the duration of child support even though all the parties and the children resided in Kansas).

¶37 Because this is a matter of first impression in Washington of interpreting a uniform law adopted by all 50 states, we may consider how these other states have addressed the issue. RCW 26.21A.905. Each of the cases cited above, *Scott*, 160 N.H. 354; *Marshak*, 390 N.J. Super. 387; and *Doetzl*, 31 Kan. App. 2d 331, held that postsecondary educational support was durational under the UIFSA. These holdings support our conclusion that the trial court's award of postsecondary educational support to Amanda modified the duration of child support established by the Nebraska order.

¶38 It may seem anomalous to deny postsecondary educational support for Amanda, who has lived in Washington for several years and attends a Washington state university. But there are two sides to this result. A child who is initially allowed the potential of postsecondary educational support in Washington will be able to receive that support even after moving to another state. Every state has adopted the UIFSA in some form and the UIFSA provides that the originating state's law applies to the duration of child support. Because the issue is durational, Washington law will apply to Washington child support orders that provide for postsecondary educational support. If the issue were not durational, other states would be free to reject the provisions for postsecondary support under Washington law.

¶39 In any event, the legislature has resolved this policy choice by adopting the UIFSA. Our responsibility under the Washington Constitution is to interpret and apply the decision of the legislature. Accordingly, we hold that postsecondary educational support is a durational aspect of child support under the UIFSA.

## CONCLUSION

¶40 Under the UIFSA, a Washington court has subject matter jurisdiction to modify out-of-state child support orders but lacks the authority to do so if (1) the conditions set in RCW 26.21A.550 are not met or (2) the modification changes the duration of the support obligation inconsistently with the law of the state that issued the initial controlling order. An award of postsecondary educational support is a durational aspect of child support to which the UIFSA applies. The trial court exceeded its authority when it ordered postsecondary educational support for Amanda, and the Court of Appeals erred in affirming the trial court's

order. We reverse and remand for further proceedings consistent with this opinion.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, CHAMBERS, OWENS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.