IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parental Rights to: | ) | No. 40254-1-III |
| | ) | |
| C.C.C. | ) | UNPUBLISHED OPINION |
| | ) | |

PENNELL, J. — A juvenile court issued an order terminating parental rights to C.C.C. The order failed to comport with RCW 13.34.200(3), which requires a statement addressing the child's relationship with any siblings. C.C.C.'s mother argues this flaw in the juvenile court's order requires reversal. We disagree. The failure to include a statement under RCW 13.34.200(3) does not invalidate the court's termination order. Rather, the remedy is remand for issuance of the required statement.

## FACTS

C.C.C. was born in 2022 and shortly thereafter declared dependent. He has a total of seven older siblings—two siblings with the same parents and five half-siblings, three through his mother and two through his father. At the time of C.C.C.'s birth, his two full

siblings had already been declared dependent and placed with the same foster family. The Department of Children, Youth, and Families inquired as to whether this foster family would also accept C.C.C., but they declined. C.C.C.'s parents subsequently relinquished their parental rights as to these two siblings, and they were adopted by their foster family.

Approximately one year after C.C.C.'s birth, the Department filed a petition to terminate parental rights. The Department cited lack of engagement, progress, and compliance in correcting parental deficiencies, and little to no effort to exercise visitation with C.C.C., as bases for termination.

Neither parent appeared at the termination trial. The court heard testimony from several witnesses. Some of the testimony touched upon the placement and adoption of C.C.C.'s full siblings, and the living arrangements of C.C.C.'s half-siblings, none of whom were being cared for by either of C.C.C.'s parents. But there was no testimony regarding C.C.C.'s contact or visits with any of the siblings.

The juvenile court ultimately terminated parental rights, finding C.C.C.'s parents were unfit because "[n]either parent has corrected their parental deficiencies and the risk of imminent physical harm to the child presented by the parents' substance use, unstable mental health, and lack of safe and stable housing persists." Clerk's Papers at 92.

The juvenile court concluded the Department had: (1) established the six elements of the statute, RCW 13.34.180(1), by clear, cogent, and convincing evidence, and (2) it had been established by a preponderance of the evidence that termination was in C.C.C.'s best interest.

The termination order does not include a statement addressing the status of C.C.C.'s relationships with his siblings and the nature and extent of the siblings' placement, contact, or visits with C.C.C.

C.C.C.'s mother now appeals.

## ANALYSIS

On appeal, C.C.C.'s mother does not challenge the juvenile court's findings that she is an unfit parent, *see* RCW 13.34.180(1) and RCW 13.34.190(1)(a), and that termination of the parent-child relationship is in C.C.C.'s best interest, *see* RCW 13.34.190(1)(b). Rather, she claims the termination order is invalid because it lacks a statement addressing "the status of [C.C.C.'s] sibling relationships and the nature and extent of sibling placement, contact, or visits" as required by RCW 13.34.200(3). The Department agrees the termination order does not comply with RCW 13.34.200(3), but claims this oversight does not invalidate the termination decision. Instead, the Department

argues the only necessary remedy is to remand for a statement in compliance with

RCW 13.34.200(3). We agree with the Department.

The issue raised by the mother on appeal is one of statutory interpretation, which

is reviewed de novo. *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009). This

court's role in statutory interpretation is first to discern the statute's plain meaning.

*In re Marriage of Schneider*, 173 Wn.2d 353, 363, 268 P.3d 215 (2011). This involves

not only an analysis of the language used in the statutory provision at issue, but also

related statutes and provisions within the same act. *Dep't of Ecology v. Campbell &

Gwinn, LLC*, 146 Wn.2d 1, 10, 43 P.3d 4 (2002).

RCW 13.34.200(3) provides: "An order terminating the parent-child relationship

shall include a statement addressing the status of the child's sibling relationships and the

nature and extent of sibling placement, contact, or visits."

The parties agree the plain language of the statute mandates strict compliance

by juvenile courts, and that the termination order in this case does not comply with

the statute. However, they disagree on the remedy and what is needed for compliance.

C.C.C.'s mother argues the status of sibling relationships is a required element to support

a termination order and urges this court to depart from the holding of Division One of this

court in *In re Dependency of J.D.P.*, 17 Wn. App. 2d 744, 487 P.3d 960 (2021).

In *J.D.P.*, the juvenile court included a statement on the status of the children's sibling relationships and the nature and extent of sibling placement, contact, or visits, but limited the evidence about sibling relationships at the termination hearing. *Id.* at 752-53. On appeal, the parents argued the juvenile court violated their right to defend themselves claiming, in part, that RCW 13.34.200(3) provides an independent requirement for courts to consider sibling relationships in proceedings to terminate parental rights. *Id.* at 755-59. Division One disagreed, explaining: "Unlike the required findings in RCW 13.34.190(1)(a) and (b), RCW 13.34.200(3) is more akin to a ministerial requirement that ensures that the termination order acknowledges the existence and status of sibling relationships." *Id.* at 759. It concluded that RCW 13.34.200(3) is not a required element to support termination, and it "does not create an independent requirement that the trial court consider sibling relationships in making the required findings in RCW 13.34.190(1)(a) and (b) necessary for termination." *Id*.

We agree with Division One's analysis as set forth in *J.D.P.* The status of sibling relationships, placement, contact, and visitation is irrelevant as to whether a parent is found to be unfit under RCW 13.34.180(1) and RCW 13.34.190(1)(a). Sibling contact may sometimes bear on whether termination is in the best interest of the child under RCW 13.34.190(1)(b). But there is no suggestion or requirement that a juvenile court

"consider" sibling relationships or visitation in making a determination on the best interests of the child. *Cf.* RCW 13.34.180(1)(e) (listing factors a juvenile court may "consider" in deciding whether there is "little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future"), *and* RCW 13.34.180(f) (specifying factors a juvenile court must "consider" in deciding whether "continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home"). As explained in *J.D.P.*, the requirement of a statement under RCW 13.34.200(3) regarding sibling relationships and placement/visitation is separate from the findings required for termination of parental rights. *See J.D.P.*, 17 Wn. App. 2d at 759.

Given the issue of sibling relationships and placement/visitation is not necessary to the findings required for termination of parental rights, a juvenile court's failure to comply with RCW 13.34.200(3) does not invalidate a termination decision. While sibling relationships are important and are vital to placement decisions, a termination order is not about placement. Children deserve permanency and finality. A parent who has been deemed unfit lacks statutory authority to upend an otherwise valid termination order based simply on a court's failure to issue a statement regarding sibling relationships. Thus, when a termination order does not contain a statement

6

as required by RCW 13.34.200(3), the remedy is simply to remand for an appropriate statement. On remand, the juvenile court has discretion to entertain additional evidence necessary for completion of the statement. However, such evidence is not relevant to the juvenile court's termination decision and shall not impact the court's findings regarding termination of parental rights.

## CONCLUSION

The order terminating parental rights is affirmed. We remand with instructions to issue a statement in compliance with RCW 13.34.200(3).

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

I CONCUR:

_____
Lawrence-Berrey, C.J.

No. 40254-1-III

FEARING, J. (concurring in part/dissenting in part) —

     *The relationships people share with siblings are often the longest-lasting they will ever have. Siblings are there from the beginning, and they are often still around after parents, and even spouses and children, are gone.* Emily Kernan, *Keeping Siblings Together: Past, Present, and Future,* NAT'L CTR. FOR YOUTH L. (Dec. 31, 2005) (internal quotation marks omitted) (quoting Linda Glover, *Overcoming Barriers to Keeping Siblings Together,* CONNECTIONS (Spring 1997), *reprinted at* https://affcny.org/overcoming-barriers-to-keeping-siblings-together), https://youthlaw.org/news/keeping-siblings-together-past-present-and-future [https://perma.cc/SKT7-W2AY].

I concur in part and dissent in part from the majority's decision. I would invalidate the order of termination until the termination court satisfies the demand of RCW 13.34.200(3).

Sibling relationships help children achieve developmental milestones and provide emotional support, companionship, and comfort in times of change. Siblings not only assist one another to adapt to new and frightening situations, they remain important figures throughout one's life.

Children encounter pain, anxiety, guilt, grief, and a lost identity when uprooted from homes and family and when entering the foster care system. Too often, this loss multiplies when the child welfare system separates siblings and when different families adopt siblings. Research establishes that children separated from siblings feel a loss of a part of themselves. Older siblings who cared for younger siblings, when a mother or father went absent or were incapacitated by drugs or alcohol, experience guilt from

abandoning the younger brother or sister.  Sadly, many of these separated brothers

and sisters lose contact with one another forever.

For many years, social science research and child welfare laws ignored the

important bond found in sibling relations.  In recent decades, however, both research

scientists and policymakers have gained knowledge of the importance of the sibling

bond, leading to a flurry of research, policymaking, litigation, and development of

innovative programs directing attention to these relationships.  Emily Kernan, *Keeping

Siblings Together: Past, Present, and Future,* NAT'L CTR. FOR YOUTH L. (Dec. 31,

2005), https://youthlaw.org/news/keeping-siblings-together-past-present-and-future

[https://perma.cc/SKT7-W2AY].

RCW 13.34.200(3) declares:

> An order terminating the parent-child relationship *shall* include a
> statement addressing the status of the child's sibling relationships and the
> nature and extent of sibling placement, contact, or visits.

(Emphasis added.)  I agree with the majority that the statute does not require the court

to expressly factor the sibling relationship into the decision as to whether to terminate

a parent-child relationship.  Nevertheless, the statutory subsection demands that the

court include a statement about the sibling relationship when entering the termination

order, suggesting that a precondition to the validity of the order is such a statement.  The

word "shall" within the context of a statute generally acts to impose a mandatory duty.

*Department of Ecology v. State Finance Committee*, 116 Wn.2d 246, 252, 804 P.2d 1241

No. 40254-1-III
*In Re Parental Rights to C.C.C.* (Concurrence/Dissent)

(1991); *Erection Co. v. Department of Labor & Industries*, 121 Wn.2d 513, 518, 852 P.2d 288 (1993).

One may adjudge me as thinly slicing straight pins when invalidating the termination order until the court prepares a statement addressing sibling relationships rather than joining the majority and affirming the order and remanding for the court to enter the statement. But compliance with RCW 13.34.200(3), when signing the termination order, forces the termination court to ponder the solemnity of sibling relations and ruminate whether the termination injures the child's best interests because of the possible severing of sibling relationships. The extraordinary, if not spiritual, bond between siblings merits the splitting of hairs.

Fearing, J.